CARTER MACH. CO. v. HANES et al.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1897.)

No. 175.

1. PATENTS—COMBINATION CLAIMS—SEPARATE ELEMENTS.
   When a patent is for a combination only, none of the separate elements of which it is composed are included within the monopoly.

2. SAME—INFRINGEMENT.
   There is no infringement of a patent which claims mechanical powers in combination, unless all the parts have been substantially used.

3. SAME—TOBACCO FLAVORING MACHINE.
   The King patent, No. 494,960, for a tobacco flavoring machine, consisting of the combination of a rotary flaring drum, a feed hopper emptying into the smaller end of the drum, and a spraying device located within the drum, construed, and held not infringed.

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

This was a suit in equity by the Carter Machine Company against Pleasant H. Hanes and John W. Hanes, trading under the firm name and style of P. H. Hanes & Co., for alleged infringement of a patent for a tobacco flavoring machine. The circuit court dismissed the bill, and the complainant has appealed.

W. D. Baldwin, for appellant.

W. W. Fuller and Clement Manly (Watson & Burton, on the brief), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and MORRIS, District Judge.

SIMONTON, Circuit Judge. This case comes up by appeal from a decree of the circuit court of the United States for the Western district of North Carolina. The complainant below filed a bill in equity against the defendant, alleging an infringement of its patent. The circuit court dismissed the bill, and the complainant appealed to this court.

The appellant holds, by assignment, patent No. 494,960, granted to James M. King, April 4, 1893, and assigned to the appellant April 10, 1893. The patent is for a tobacco flavoring machine. The first claim, and the only one in suit, is "the combination, in a tobacco flavoring machine, of a rotary flaring drum, provided with driving mechanism, a feed hopper emptying into the smaller end of the drum, and a spraying device located within the drum, whereby the tobacco is sprayed and leaves separated as they pass through the drum, substantially as described." Mechanical devices for applying a flavoring liquid to tobacco were well known before the date of this patent. The patent of Smith & Messenger (No. 172,666, January 25, 1876) shows a flavoring machine, consisting of an inclined cylindrical rotating drum, through which tobacco passes, and in its passage is sprayed by a spraying device located outside of the drum at its lower end. Smith & Messenger improved on this by patent No. 187,187. These have expired. C. F. Bjick also had a patent (No. 195,578, October 9, 1877) for spraying tobacco leaves. His device has an inclined cylindrical drum, through which the leaves of tobacco pass, and in their passage are sprayed from a spraying nozzle at the upper end of the drum. So King was not a pioneer in seeking and obtaining this result by means of a revolving cylinder and a spraying device.

His claim is for the combination in a tobacco flavoring machine of three parts,—a hopper, a flaring drum, and a spraying device within the drum. His claim, then, is for an entirety. He cannot abandon a part, and claim the rest. He must stand by his claim as he has made it. If more or less than the whole of his ingredients are used by another, such party is not an infringer, because he has not used the invention or discovery patented. Shumacher v. Cornell, 96 U. S. 549. When a patent is for a combination only, none of the separate elements of which the combination is composed are included in the monopoly. Rowell v. Lindsay, 113 U. S. 101, 5 Sup. Ct. 507. Or, as expressed by Mr. Justice Bradley in The Corn-Planter Patent (Brown v. Guild), 23 Wall. 181:

"When a patentee, after describing a machine, claims as his invention a certain combination of elements, or a certain device or part of the machine, this is an implied declaration, as conclusive, so far as that patent is concerned, as if it were expressed, that the specific combination or thing claimed is the only part which the patentee regards as new."

See, also, Voss v. Fisher, 113 U. S. 213, 5 Sup. Ct. 511.

The parts of the combination claimed by the patentee are not new. The hopper has long been well known, and numerous patents are cited in the answer, showing its frequent use before the date of this patent. Indeed, the concise and clear definition given of this term

by the expert of the appellant to the court below establishes this. "A hopper is a mechanical device which, in the progress of the arts, was resorted to to take the place of the hands for the purpose of feeding or conducting a substance from one position to another." So, also, the flaring drum was not unknown to the art before the date of this patent, and it is frequently spoken of as the equivalent of an inclined cylinder. In the patent of Justus (No. 317,461, May 5, 1885) is shown a conical drum, and in his specification he says: "The conduit, B, instead of being made flaring or conical, may be in the form of a true cylinder." So Coker's patent (No. 249,009, November 1, 1881) shows a conical drum, and the patentee says, in his application: "The drying cylinders are arranged in an inclined position, so that the grain will gradually work its way from the upper to the lower ends of said cylinders, or the same thing can be accomplished by making the cylinders conical." So in Coleman's patent (No. 111,-612, February 7, 1871) a conical drum is used. "It consists," says the patentee, "of a large, hollow, revolving vessel, which may be cylindrical in shape, or it may be slightly tapered, so as to be somewhat smaller at one end than the other." He goes on: "The vessel, C, is either cylindrical, or it may form a hollow frustrum of a cone, in which case the necessary inclination will be given to the bottom without inclining the axis on which it revolves." Also, as has been seen, a spraying device, for spraying leaf tobacco within a revolving cylinder, was used both in the Smith & Messenger patents and in that of Bjick. So the spraying of leaf tobacco, being well known, the use of the hopper being general, the utilization of the inclined cylinder or its equivalent, the conical or flaring tube, having been discovered, and a mode of spraying from a tube being also known, the appellant can rely only on the combination of the patent, and it must stand by the claim of the patentee as he made it.

The machine of the defendant, which is charged with the infringement of this patent, was originally constructed under the direction of John C. Frost. It has the flaring tube, and a spraying device at the lower end of the tube, outside of it. It differs with the machine of appellant in the hopper. The hopper, in the patent, is attached to the rear or smaller end of the drum. The hopper is supported between uprights, on bars, and at its inner lower end is a spout. In the lower end of the hopper is a feed roller, mounted on a shaft, which is moved by a belt passing over belt pulleys. In operation, the feed roller (which begins to rotate as soon as the machine is put in action) carries the supply of tobacco in the hopper out through the spout at the lower end of the hopper into the rotary flaring drum. The machine used by the defendant has no hopper like this, and no device by which the leaves of tobacco are put into any receptacle, and are fed into the drum by the action of the machinery. It has an opening at the back of the drum, with a sort of shute, and through this hole the tobacco is fed by hand into the drum. This, clearly, is not a mechanical device, resorted to to take the place of the hands, for the purpose of feeding or conducting a substance from one position to another. So, in this important feat-

ure of the combination, the machine of the defendant is lacking. "There is no infringement of a patent which claims mechanical powers in combination, unless all the parts have been substantially used." Eames v. Godfrey, 1 Wall. 78. A combination of the mechanical parts of an entire machine is not infringement, except by the use of the entire combination. Brown v. Guild (quoted as "The Corn-Planter Patent") 23 Wall. 181.

Again, the claim of the patentee places his spraying machine within the drum. That of the defendant is without the drum. Is this an essential part of the machine of the appellant? The application of the patentee for his patent met with frequent disallowance and rejection by the commissioner, and in every instance of rejection the location of the spraying device was not fixed. The claim which finally passed was that which located the spraying device within the drum. Indeed, the patents of Smith & Messenger and of Bjick all had spraying devices for the same purpose, but outside of the drum. The expert for the defendant thus clearly contrasts these spraying devices of appellant and of the defendant:

"In the King patent the spraying device is due to the presence of the valve, Q, which acts as a dash plate or spray disc, against which the streams of liquid issuing from the nozzle impinge. If this construction is properly proportioned, the liquid will issue from the spraying device as a sheet of spray, of approximately fan shape, in a substantially downward and nearly vertical direction. The effect will be to form a sheet of spray, extending in a substantially vertical direction, in very much the same manner, as every one has noticed to result from placing his finger immediately contiguous to the mouth of an ordinary water-supply faucet or spicket. Every one who has used a garden hose knows how to send the water out in the form of a spray by placing his finger properly over the nozzle. And in King's construction the flap valve, Q, fulfills the same purpose as a person's finger in using a garden hose. Since the construction of King's spraying device results in a downwardly flowing sheet of spray, it follows that his spraying device must be located inside of the drum, in order that the spray may come in contact with the tobacco passing through the drum. If we regard the interior of the drum as being divided by a vertical plane, cutting the drum longitudinally through its axis of rotation, and then view the drum while in operation, it will be seen that substantially all of the tobacco leaves are located in the right-hand half or section of the drum, and that the left-hand section is empty of leaves, with an occasional exception. This location of the leaves, during the practical operation of the machine, at the right-hand side of the drum, has been taken advantage of in locating and constructing defendant's spraying device. The spraying device is located at the left-hand side of the drum, about half way between its extreme top and bottom, so that it is adjacent to the descending wall of the drum and its side which contains no tobacco leaves. The spraying nozzle is so constructed that the liquid emerges from it in a substantially horizontal direction, in a fan-shaped sheet of spray. The direction of this sheet of spray is such that, if the drum should be empty, the spray would fall upon the lower portion of the rising side of the drum, in a belt extending all the way from the junction of the perforated and imperforated sections of the drum to the discharge mouth of the drum. Consequently, when the drum is in operation, a sheet of spray shoots across the empty side of the drum, and comes in contact with the tobacco leaves as they fall downwardly through the drum, during the entire travel of the leaves through the imperforated section of the drum. The consequence is that each leaf, since it rises and falls a number of times during passage through the drum, frequently falls through the spray, so that every exposed portion of the leaf is uniformly and fully sprayed."

Frost, whose invention is used by defendant, after he had made application for a patent, conceded priority of invention to King,

under whom appellant claims. Before that time, however, he had made and sold one of his machines to defendant. This was burned in May, 1893. The one now in use by them was built after that date. Be this as it may, defendants were not parties to the concession, the motive and consideration for which are not disclosed, nor are they or the court estopped from considering the two inventions on their merits. The most that can be said of Frost's action is that it must be considered with the other evidence in the cause.

We see no error in the conclusion, reached by the circuit court, that the appellees do not infringe the patent of the appellants. The decree of the circuit court is affirmed.