WALKER PATENT PIVOTED BIN CO. v. MILLER et al.

(Circuit Court E. D. Pennsylvania.   June 22, 1906.)

No. 48.

1. PATENTS—SUIT FOR INFRINGEMENT—REFERENCE FOR ACCOUNTING.

Where in a suit for infringement the validity of a patent has been sustained, the general principles and scope of the invention determined, and certain structures made by defendants held to infringe, on an accounting for damages and profits the complainant is not limited to an inquiry as to the number of such particular constructions made and sold by defendants, but, except as concluded by the decree, and provided the differences be not so great and the question of infringement in such doubt that the complainant should be put to a supplemental, if not a new, bill, the whole question of infringement and its extent are generally open for consideration by the master.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 591.

Accounting by infringer of patent for profits, see note to Brickill v. Mayor. etc., of City of New York, 50 C. C. A. 8.]

2. SAME—MOTION FOR INSTRUCTIONS TO MASTER.

Where, on a reference for an accounting as to damages for infringement of a patent, the master by his rulings limits the scope of the inquiry, the matter may properly be presented to the court for decision by a motion for instructions to the master.

In Equity.   Suit for infringement of patent.   On exceptions to ruling of master and motion for instructions in proceedings for an account.

Patent considered and sustained in Walker Patent Pivoted Bin Co. v. Brown & Krause (C. C.) 110 Fed. 649, and in Walker Patent Pivoted Bin Co. v. Miller & England, 132 Fed. 823; affirmed (C. C. A.) 139 Fed. 134.   See, also, Miller & England v. Walker Patent Pivoted Bin. Co. (C. C.) 138 Fed. 919, affirmed (C. C. A.) 145 Fed. 832.

Ernest Howard Hunter, for the motion.

Henry E. Everding, opposed.

ARCHBALD, District Judge.[1]   On the accounting before the master, Alexander H. Miller, one of the defendants, being under examination, and having been interrogated with regard to certain bins, which the defendants had furnished and installed at No. 3,300 North Twenty-Second street, Philadelphia, being further asked what kind of bins they were, made answer, "Well, they are not mentioned in either of these types"; referring to those discussed in the opinion sustaining the patent and finding that it had been infringed.   132 Fed. 823.   He was thereupon asked whether they were counterbalanced, swell front, pivoted bins, to which he answered, "They were neither type 1 nor type 2"; referring again to those so designated in the opinion.   The question was then put: "Do you refuse to say whether they were counterbalanced, swell front bins"? these, as declared by the court, being the distinguishing characteristics of the complainants' bins.   110 Fed. 649, 651; 132 Fed. 823, 826.   This, by the instruction of his coun-

---

[1] Specially assigned.

sel, he declined to answer. There was also a similar inquiry, with a similar result, as to bins which had been furnished to J. C. Morris, 41 Main street, Manayunk, Philadelphia. At a subsequent meeting the following question also was put:

"Will you please look at the drawing which I now show you, and state whether or not that correctly represents the construction of some of the pivoted, counterbalanced, swell front bins which your firm constructed and sold, and which you say do not fall within types 1 and 2."

Whereupon, upon objection by defendants' counsel, the master ruled, in substance, that the types of bin which were decided to be an infringement were clearly shown by the drawings already in the case, being designated by the court as type 1 and type 2; that the witness might be examined as to the number of bins of these types constructed by the defendants, but should not be required to answer as to other constructions; and that if the complainants contended that other bins constructed by the defendants were infringements, the bins should be produced, and expert evidence given as to their character. With this the objection of counsel was sustained, and the witness directed not to answer the question. The subject came up again, with regard to bins furnished to James Arthur, at Fifty-Seventh and Market streets, Philadelphia, the inquiry being directed as before, to whether they were counterbalanced, swell front bins, and the same ruling was made; the master holding that the witness should only be required to answer as to the two particular types of bins which the court had decided to be an infringement. Counsel for complainants thereupon took an exception, and the rulings of the master have been certified to the court for disposition.

By the proceedings previously had in the case leading up to the accounting, the complainants established the validity of the patent which they held, and that the defendants had infringed it. Two kinds of bins were shown to have been manufactured by the defendants with regard to which this was held, one of which was hinged to the exterior casing, at the lower front edge of the bin body, and the other was pivoted at the same point, but upon links, by which, if desired, it could, as an additional feature, be swung clear of the casing. As already stated, the general character of bin covered by the patent, of which these were infringing types, was declared to be a tiltable or pivoted swell front, counterbalanced bin, by which it was differentiated from other previous forms, and held to comprise a class of its own. So far as the defendants may be shown to have infringed upon the exclusive rights secured to the complainants by their patent by the manufacture, sale, or use of this kind of a bin, they must respond in damages, and it is for the purpose of determining the extent of their infringement that the accounting proceeds. Undoubtedly, as to the immediate forms of bins considered by the court, there can be no question. But the complainants are not confined to this. They are entitled to have the defendants charged with all such bins as embody or adopt the principle of the invention, even though they may vary from the particular construction which the court has passed upon and condemned, and from this they cannot rightly be cut off.

The first question which the witness refused to answer was directed to the inquiry, whether the bins installed at the place mentioned were counterbalanced, swell front, pivoted bins, which, as so characterized, apparently brought them within the terms of the patent. Had the witness said "No," the complainants might have had to accept it, although they would have been entitled to proceed to the further inquiry, as to just what construction they were. But the answer did not meet the question in this way, and was in fact evasive. The witness declared that they were neither type 1 nor type 2. But this was not to the point. The inquiry was not so limited, and is not to be. The complainants, moreover, were entitled to the facts, and not to the witness' conclusions from them. The question may have been objectionable as calling for a conclusion, and it certainly would have been better if a direct description of the bins referred to had been asked. But no point was made of that either before the master or here, and the witness cannot be allowed to conclude inquiry by what may happen to be his own ideas upon the subject. The basis of the master's rulings upon this and the other matters certified is disclosed by his subsequent explanation, although the subject came up next in a somewhat different form. A drawing being exhibited to the witness, the question was asked whether it correctly represented the construction of bins which his firm manufactured, which did not, as he said, fall within the two types named. Had the master declared upon this, that bins of the character shown by the drawings were not within the terms of the patent, and so were immaterial, it would have been entirely within his prerogative to do so, subject, of course, to a review by the court upon exception. His ruling, however, was aside from this. He virtually held that the investigation was confined to the particular forms of bins which the court had passed upon. It is true that he added that, if the complainants contended for either types of bins as infringements, they should produce the bins, and have experts pronounce upon them; which apparently left the door open for that line of proof. But assuming that the character of bins displayed in the drawings was within the terms of the patent, which he did not undertake to pass upon, it was material to show that the defendants manufactured them, as to which the witness was excused from answering, and the evidence upon the subject was thus cut off. As already intimated, the idea of the master evidently was that, at least as the case stood, only the immediate forms of bins which had been put in issue and passed upon were to be considered in the accounting. But this clearly is not the rule. Except as concluded by the decree, the question of infringement is always open for consideration before the master. Turrill v. Illinois Cent. Railroad, 5 Biss. 344, Fed. Cas. No. 14,272; Wooster v. Thornton (C. C.) 26 Fed. 274; Thomas v. Electric Porcelain Co. (C. C.) 114 Fed. 407; Hanifen v. Armitage (C. C.) 117 Fed. 845, 851; Westinghouse Mfg. Co. v. Sangame Electric Co. (C. C.) 128 Fed. 747. In directing an account no more is decided, aside from the validity of the patent, than that infringement has been made out. The extent of it is an after consideration. No doubt, to make sure, all the defendant's devices are usually put in, but it also not infrequently happens that,

pending litigation, and in order, possibly, to get around it, changes are made of more or less substance, with regard to which, if the litigation is to be effective, the complainant in proceedings for an account must have the right to inquire and show that they infringe, and is not to be confined to the immediate structures or devices which were passed upon by the court. It is true that there may be cases where the differences are so great and the question of infringement in such doubt that neither the master nor the court will feel justified in going into them, and where the complainant may properly be put to at least a supplemental, if not a new, bill. California Paving Co. v. Moliter, 113 U. S. 609, 618, 5 Sup. Ct. 618, 28 L. Ed. 1106; Westinghouse Air Brake Co. v. Christensen Engineering Co. (C. C.) 126 Fed. 764; Chicago Grain Door Co. v. C. B. & Q. R. R. (C. C.) 137 Fed. 101. But, however that may be in other cases, there is nothing of the kind here. The claimants, to all intents and purposes, were pursuing a legitimate line of inquiry, calculated to determine the extent of the defendants' infringement, and were entitled to prosecute it to the end.

It was also entirely in conformity with the established practice to bring this matter up by a motion for instructions, in the way that has been done (Coddington v. Propfe [C. C.] 112 Fed. 1016) ; nor, rightly considered, is there anything to the contrary in Hoe v. Scott (C. C.) 87 Fed. 220. All that was there decided was that the court would not give directions to the master to refuse to take evidence concerning machines which the defendants claimed were not an infringement until the court itself had had opportunity to determine whether they were or not; it being held that the question was, in the first instance, for the master. This is exactly the opposite of what we have here; the master, by a misconception of the scope of the inquiry and of his own powers, without passing upon the question presented, having refused to receive what was apparently relevant evidence. The effect of this was too serious to pass over, and his ruling was therefore properly brought here for review, without waiting for the coming in of his report. The case of Hoe v. Scott also, as it will be observed, is direct authority for the position already taken that the question of infringement is open, and to be passed upon as to devices and structures outside of those directly considered by the court.

An order will therefore be made requiring the witness to answer the questions which have been certified.