CRAMER & HAAK v. 1900 WASHER CO.

(Circuit Court, M. D. Pennsylvania. July 27, 1908.)

No. 23, January Term, 1907.

1. PATENTS—INVENTION—USE OF OLD MECHANICAL DEVICES.

Except in inventions of the most primary character new mechanical forms and appliances are not to be looked for, and there may be patentable invention in making use of those which are known in the same or kindred arts by so adapting and combining them as to bring about new or improved results.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 28.]

2. SAME—INFRINGEMENT—WASHING MACHINE.

The Cramer & Haak patent, No. 829,631, for a washing machine consisting of an oscillating tub adapted to be run by power instead of by hand, was not anticipated, and discloses invention. Also, held infringed.

In Equity. Suit for infringement of letters patent No. 829,631 for a washing machine issued to C. W. Cramer and H. C. Haak, August 28, 1906. On final hearing.

Henry E. Everding and George W. Ellis, for complainant.
Samuel O. Edmonds and Frederick M. Welsh, for defendant.

ARCHBALD, District Judge. The complainants are the inventors of a washing machine, or tub for washing clothes, particularly adapted and designed for use with a water, steam, or electric motor. Tubs of the class to which it belongs, up to that time, had been actuated solely by hand, being oscillated back and forth by means of a handle fixed to the rim of the tub, or a hand-moved lever with gearing or crank attachment; the motive force in either case being the human arm. But in changing from hand to machine power, the effect at the end of the stroke had to be looked to, which is taken care of without more in the one case, by the natural slowing up on reaching the limit of the operator's arm, but results in a racking jar, unless obviated in some way, when the tub is swung back and forth by the reciprocations of a machine-driven rod. To meet this difficulty, the complainants, having fulcrumed their actuating lever on the pivot of the tub, connect up tub and lever by a spiral spring, which serves not only to cushion the stroke at either end, but, by the extension of the spring under the momentum of the tub, stores up a recoil energy, which starts it on the return, materially relieving the demand on the motor and incidentally removing any liability of a dead center. By the stretching of the spring, also, a long swing of the tub is secured, with a relatively short movement of the motor piston, giving a maxi-

mum actuation, with a minimum expenditure of power, and at the same time making for compactness and economy of structure, by a reduction of the driving mechanism.

It is clear that there is nothing which directly anticipates this in the prior art. The only question is whether it shows an inventive advance. An oscillating tub, of course, was not new, being found in the Ahrends (1888), the several Caslers (1897–1903), the Wearne (1899), and the Fawkes (1904). Neither was a resilient spring, to cushion the tub at the end of the stroke and assist in its recoil, which appears in certain of the Caslers (1898, 1902, 1903), the Wearne, and the Fawkes. Nor was it new to reciprocate the tub by means of a lever, fulcrumed or pivoted concentrically with it, which is to be found in the Ahrends, and one of the Caslers (1899). All therefore, as it is said, that the complainants did, after having examined the different tubs in use, and adopted the oscillating form common to the art, was to provide for its actuation by means of a driving rod, as in the Ahrends, acting upon a lever, fulcrumed on the pivot of the tub, and adapted to be reciprocated by means of a segmental rack, as in one of the Caslers, and connecting up lever and tub by the ordinary draft spring extensively used in numerous mechanical devices, as well as suggestively shown, performing the same functions, in the various Caslers, the Wearne, and the Fawkes. This is a familiar and at times an effective argument, with which to demolish a patent; but its value depends, in any case, upon how far it is borne out. Except in inventions of the most primary character, new mechanical forms and appliances are not to be looked for, and inventors have to be content, in carrying out their ideas, with making use of those which are at hand, in the same or kindred arts, adapting and combining them to bring about new results. That washtubs, as a class, are a legitimate subject for the exercise of inventive talent, is proved—if proof were necessary with respect to so important a domestic article —by the concern which has been manifested, and the many efforts which have been and still are being made by different inventors, as shown by the record, to secure a good one. The person who first devised an oscillating tub was more or less of a pioneer, as to whom those who came afterwards are mere improvers, having introduced a new principle, the agitation of the clothes and the surging of the water about them, by the motion of the tub, being substituted for the action of a rotary scrubber, or the rubbing of the same by hand. So, up to the time of the present invention, so far as relates to oscillating tubs, there was nothing in use but hand power, and, in providing for a change from hand to machine, the complainants have in the same way brought in something new and decidedly useful, practically relegating everything not so operated to the scrap heap. Unless therefore the adaptive changes made necessary thereby were obvious, or suggested by what was already to be found in the same or kindred arts, there is no reason why they should not be accorded the merit of invention.

It is said, however, that, even though the use of machine power may be indicated and provided for in the specifications, it is merely a tub, and not a machine-actuated one, that is patented; the concrete

device and not the idea being all that the complainants are entitled to. But the underlying idea of the patent, as disclosed by the specifications, is a machine-driven tub, and while it may not be declared for in so many words in the claims, or indeed be patentable by itself as being nothing but an abstraction, it is, "in a device of the class described," that the combination which is the subject of the patent is said to consist, which carries it back to the specifications from which it cannot thus be separated. What the complainants invented, in other words, was a washtub adapted to be run by power, instead of by hand. It is that which they unmistakably describe, and which characterizes and gives point to, the invention, and while they may not be able to lay claim to more than the particular form and arrangement of parts for which they have declared, to that at least they are entitled for the purposes specified, if in other respects it shows invention.

Nor can it be successfully maintained, minimizing the complainants' efforts, that all they did was to appropriate and put together already existing appliances, without inventive adaptation, the spring to cushion the stroke and aid in the recoil being old, as well as the pivotally fulcrumed lever, with segmental end, intermeshing with a power driven rack bar, by which the tub is reciprocated. For whatever may be said of the means for directly driving the tub, which so appears, as being both old and obvious, the spring of the patent forms a part of the lever, and thus enters into the actual reciprocation of the tub, assisting to impart motion to it, instead of simply acting as a check upon it, differing entirely in this respect from the various devices referred to above in which a retracting spring is found. So far as the immediate cushioning, and to a certain extent the recoil, are concerned, no doubt the spring operates the same in each, being extended by the momentum or swing of the tub and reacting against it; but in shifting from a hand to a power driven tub it was by no means obvious, and required something more than ordinary mechanical insight, to appreciate that, while retaining the same beneficial effects, the rigidity of the stroke of a power driven rod could be relaxed, as it must be to avoid racking, by hooking up lever and tub by an intermediate spring; a maximum swing with a minimum stroke being at the same time secured, making for economy of parts and motive force enough of itself to sustain invention. It may be that, outside of the spring, nothing can be predicated on the special form of lever adopted, the rest of it, as contended, being a perfectly ordinary and obvious construction, where machine power is to be resorted to; but the spring end connection is certainly new, and the complainants are entitled to rely upon the new and useful results produced by it, as evidence not only that something more than ordinary skill was involved, but of inventive advance over the existing art. The defendants have found it profitable, as we shall see, to adopt it, to help out the recoil springs of the Wearne machine, which, according to Mr. Winans, their mechanical engineer, are not sufficient without it, and have also seen fit to try and protect the combination with a patent, after which it does not altogether lie in their mouths to deny its utility or dispute that it is patentable.

It is said, however, that, even if the patent is valid, the invention is a narrow one, being confined to the specific arrangement shown, on which the defendants do not infringe. There are seven claims to the patent, all but the second and seventh being relied upon, of which the first, although broader than the rest, may be taken as representative:

"1. In a device of the class described, the combination with a pivotally mounted tub, of a lever fulcrumed on the pivot of said tub, means for actuating said lever, and a spring connecting the lever with said tub."

This is fulfilled in terms by the tub which the defendants were manufacturing when the bill was filed, however it may be as to the one which is being now made. The only distinction attempted with regard to it is that, in addition to the spring attachment between the lever and tub, it is supplied with two other twin springs, diametrically opposite to each other, attached at one end to brackets on the standard which supports the machine, and being connected at the other with a stop plate or bar, pivoted concentrically with the tub, the shoulders of which are engaged at each reciprocation of the tub by a lug projecting downwards from the frame or spider on which the tub is carried. The defendants, in other words, employ three springs, where the complainants have but one, having a driving spring to connect up the lever and tub, and two oppositely placed recoil springs to take up the momentum of the tub and start the recoil; the one being operative, as it is said, at one part of the stroke, and the others at the other, but not both at the same time. The function of the two recoil springs is practically the same as in the Wearne patent, which the defendants own, and are therefore entitled to use; but the combination of these with the spring lever attachment of the patent in suit is another matter, and does not avoid infringement because the two are brought together in the one machine. This is demonstrated by observing the effect of dropping out one or the other of them. If the spring end of the lever, for instance, be dispensed with, and the twin recoil springs be retained, there is, of course, no infringement; but, on the other hand, if the twin recoil springs be thrown out, and the spring lever remain, we have the exact structure of the patent, and, having this, how can it be said that the combination of that which is not an infringement with that which is saves the result?

It is suggested that the defendants divide up the threefold function assigned to the single spring of the patent; the recoil springs, which they employ, being depended on solely to absorb the energy or momentum of the tub and assist in its recovery, and the spring of the lever merely serving to even up or relieve the tension and to impart motion to the tub in a resilient or yielding manner, like the ordinary draft spring. But infringement is not avoided by the dividing up of functions and assigning them around to different parts of the same character, operating in the same way. Nor does it matter that the three-spring arrangement may be an improvement of sufficient merit to deserve and receive a patent, as it has; it being possible that a patented improvement may be an infringement of the device on which it improves. Watrous Mfg. Co. v. American Hardware Co. (C. C.) 161

Fed. 362. Not altogether consistently with the asserted protection secured by the patent which they so hold, it is urged that the defendants' machine is nothing more than their old Standard or Wearne washer, with the addition of a drive lever with draft spring attachment which any one was entitled to use; but, as already pointed out, it is none the less an infringement to apply, as this does, the spring lever of the patent, which is not to be identified with the ordinary draft spring, to an existing style of tub; the combining of the two in no way relieving from the appropriation which is so made. And this is emphasized by the statement of Mr. Winans that the spring attachment of the patent was added because he realized that a fixed or rigid connection without it would rack the machine, while the use of it would permit an adjustment to the varying momentum of the tub and its load, one of the purposes for which it was designed. This, as already suggested in another connection, is not only a tribute to the efficiency of the device, but a distinct proof of its necessity to the proper operation of the machine; there being no extenuation for, or escape from, the taking which is thus confessed.

It is further said, however, that the defendants have abandoned the style of tub which they were making when the bill was filed, and that nothing can be charged against the one which they now use; but, infringement having been made out as to the one, it is not important at this time whether the form to which they have changed infringes or not, which can be considered when it comes to the accounting. Hanifen v. Armitage (C. C.) 117 Fed. 845, 851. Walker Patent Pivoted Bin Co. v. Miller (C. C.) 146 Fed. 249.

Let a decree be drawn sustaining the patent, awarding an injunction, and referring the case to a master.