DUNKLEY CO. et al. v. PASADENA CANNING CO. et al.

(Circuit Court of Appeals, Ninth Circuit. October 29, 1919. Rehearing Denied
January 5, 1920.)

No. 3316.

PATENTS ⬦⟶328—INFRINGEMENT; FRUIT-PEELING MACHINE.

The Dunkley patent, No. 1,104,175, for a fruit-peeling machine, in
view of the prior art, is limited to the particular means employed for
removing the skin of the fruit after treatment, and, as so limited, *held*
not infringed.

Appeal from the District Court of the United States for the South-
ern Division of the Southern District of California; Oscar A. Trippet,
Judge.

Suit by the Dunkley Company and the Michigan Canning & Machin-
ery Company against the Pasadena Canning Company and George E.
Grier. Decree for defendants, and complainants appeal. Affirmed.

This is a suit for infringement of letters patent No. 1,104,175, issued July
21, 1914, for a machine or device for peeling peaches and other fruits, and
also for infringement of letters patent No. 1,237,623, issued August 21, 1917,
for the process of peeling peaches or other fruits or vegetables. From a
decree in favor of the defendants, the plaintiffs have appealed.

Many of the questions here involved were before this court on appeal in
certain consolidated suits, wherein one of the present appellants was plaintiff,
and parties other than the present defendants were defendants. A decree
upholding the validity of the machine patent and adjudging infringement was
there affirmed by this court. Central California Canneries Co. v. Dunkley
Co., 247 Fed. 790, 159 C. C. A. 648. Reference is made to the opinion in that
case for a more complete description of the patented machine or device and
the issues involved, as the pleadings in the several cases are substantially,
if not identically, the same.

Raymond Ives Blakeslee, of Los Angeles, Cal., Fred L. Chappell, of
Kalamazoo, Mich., and Drury W. Cooper, of New York City, for ap-
pellants.

Francis J. Heney, Kemper B. Campbell, Frederick S. Lyon, and
William J. Carr, all of Los Angeles, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and RUDKIN, Dis-
trict Judge.

RUDKIN, District Judge (after stating the facts as above). While
there are many assignments of error, the only questions deemed wor-
thy of consideration are the following. The appellants contend:
First, that the appellees are estopped by the judgment or decree in
the case of Central California Canneries Co. v. Dunkley Co., supra;
second, that, regardless of the question of estoppel, the decision in that
case should be followed here under the rule of stare decisis; third,
that, regardless of the prior decision, the patents in suit are valid;
and, lastly, that the patents have been infringed. The court below

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

found against the appellants on each of these several propositions, but in the view we take of the case it is only necessary for us to consider the question of infringement; for, assuming that the decision in that case should be followed here and is binding upon the appellees, the question of infringement was not there involved, because the Grier machine or device then before the court is not involved in the present case. In that case we said:

"The Grier device was never patented. Grier appears to have been connected with the fruit-canning business for many years, and was familiar with the process of dipping peaches in lye as early as 1891, and thereafter washing them with water. In 1902 he formed a partnership with a Mr. Taylor, and leased a canning plant in Pasadena, where they handled peaches, among other fruits, and from the testimony it would appear that he was considering how to handle a greater quantity, and attempting to devise more efficient means for peeling than the hand method; but the only real experimentation that he made in 1902 was by putting a few peaches in a wire basket and dipping them in the heated lye solution, and then using a hose by hand to wash off the peeling. He says he conceived the idea right then of building a machine to do that work; but there is no testimony to the effect that he did anything in the way of reducing the idea to a practical form, or proving his idea an operative one, until the following summer, 1903, when he built two machines, one for his own plant, and one for another company in Pasadena, not identical with the plaintiff's machine, but embodying the idea of rotation of the peaches as they progressed, and the application of peeling sprays or jets of water. The ideas of Grier and the plaintiff may have been contemporaneous; but there is no evidence of such prior use of the Grier device as to defeat the plaintiff's priority of right. Grier did not apply for a patent for his device, and discontinued the use of his machine when he received notice of Dunkley's claimed infringement."

On the contrary, the Grier machine or device now owned and operated by the appellees is a patented device, and in our opinion differs widely and materially from the device covered by the Dunkley patents. A brief reference to the claims in the respective patents will readily demonstrate this. Under the Dunkley patent the fruit is delivered into an endless conveyor, and passes between rotary brushes for a distance of about six feet; the brushes rotating the peach as it passes along, so that every portion of the surface is subjected to jets of water striking the fruit tangentially from perforated pipes arranged along the passage, and driven with such force as to remove the disintegrated skin remaining on the peach and cleansing the particles from the brushes.

The appellees' device, on the other hand, is well described in the second claim of the patent as follows:

"In a fruit-treating machine, a cylinder, a series of partitions in said cylinder formed with central openings, said partitions dividing the cylinder into a series of communicating compartments adapted to contain a body of liquid, a revoluble shaft extending axially of the cylinder, a series of perforated projected screw blades of relatively great pitch, offset and angularly disposed to each other, mounted on said shaft, one blade in each compartment, adapted on rotation of the shaft to pick up the fruit deposited in one compartment and eject it into the adjacent compartment through the opening in the partition, and whereby the fruit may be advanced step by step throughout the length of the cylinder and finally discharged therefrom."

In view of the prior state of the art, it is quite apparent to us that there is a substantial and material difference between the two devices. The art of peeling peaches by the use of hot caustic soda or lye,. and then removing the disintegrated skin by the use of water, was well known years before the application for the Dunkley patent was made. The manner of using the caustic soda or lye was always the same, but the mode of removing the disintegrated skin varied from time to time, from merely dipping the peaches in water in a perforated bucket, to the use of a common hose. In view, therefore, of this prior state of the art, the Dunkley patents must be limited to the particular means employed, and those means must be limited to directing peeling jets of water upon the fruit as described in the patent. For if the patent should be construed to cover every possible means for removing the disintegrated skin by the use of water it would grant an unwarranted monopoly, and, furthermore, the patent would be rendered utterly void because of anticipation and prior use. The court below saw the different machines in operation, and its conclusion upon the facts that there was no infringement is manifestly right.

Some question has been raised as to the costs or witness fees in the court below, but no particular item is objected to, and we see no reason for disturbing the conclusion of the court in that regard.

The decree is therefore affirmed.