WESTINGHOUSE et al. v. HIEN et al.

(Circuit Court of Appeals, Seventh Circuit. October 31, 1907. Rehearing Denied January 14, 1907.)

No. 1,370.

PATENTS—PROCEEDINGS TO OBTAIN PATENT—EFFECT OF DECISION IN INTERFERENCE PROCEEDING.

Under the rules and practice of the Patent Office the decision of the examiner of interferences on a declared interference determines only the question of priority of invention in time as between the parties, and the party against whom the decision is rendered may still contend that there is no interference in fact or that the successful party is not entitled to the claims made, and he is not concluded upon the question of his right to a patent until the expiration of the time allowed him by statute for an appeal from the final order rejecting his application.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

This is an appeal from a decree of the Circuit Court dismissing on demurrer appellants' bill as amended, because, as the Circuit Court held, it was brought prematurely. The question relates entirely to the Patent Office practice as to appeals in interference cases. The action was brought to rescind a contract for the sale of rights claimed under applications for patents for inventions in friction draft and buffing apparatus.

The bill was filed February 1, 1906, and prays for a decree for the cancellation of three contracts by which the appellee, Phillip Hien, granted to the appellants the exclusive right to manufacture, use, and sell apparatus under certain inventions supposed to have been made by him, for an injunction against a suit at law on the contracts, and an accounting for moneys paid thereunder.

The bill, as amended, after averring the citizenship and residence of the parties, alleges that on or about November 24, 1902, appellant George Westinghouse was the owner and patentee of certain specified United States letters patent (12 in number) relating to improvements in friction draft and buffing apparatus; that appellant, the Westinghouse Air Brake Company, as licensee, was then and for many years had been manufacturing and selling apparatus embodying said improvements, and that this was a large and valuable part of its business.

The following facts appear from the amended bill: On or about said day, November 24, 1902, appellees Hien and Chamberlin represented to appellants that Hien was the inventor and owner of certain inventions for which applications for United States letters patent were then pending, viz., No. 116,187, for a friction spring; No. 117,244, for draft gear and buffing apparatus; and No. 121,756, for friction spring; and of a Canadian patent for improvements in friction spring. Messrs. Hien and Chamberlin further represented that the invention set forth in application No. 116,187 was a broad and generic invention, and that the inventions set forth in applications Nos. 117,244 and 121,756 were specific and detailed features of improvements under said generic invention under and subordinate to said application No. 116,187; that the said generic invention set forth in said application No. 116,187 was a wide departure from anything theretofore known in the art to which it related, and by reason of its effectiveness and cheapness of construction would work a revolution in said art, and would be of great practical commercial value and importance. Messrs. Hien and Chamberlin stated also that an interference had been declared by the Patent Office between Hien's application No. 116,187 and that of one Shepard, No. 90,831, involving claims 1, 3, 4, and 13 of Hien, and was then pending, but that they, the said Hien and Chamberlin, had carefully investigated the patentable subject-matters involved in said interference; that the said subject-matters were in fact separate and distinct, and that no interference in fact existed.

After making the aforesaid representations and statements, Hien and Chamberlin solicited the appellants to enter into a contract with Hien for the exclusive right to manufacture, sell, and use devices made in accordance with the inventions set forth in said applications and Canadian patent, upon a royalty; and the appellants believing that said representations and statements wer' true, and that said Hien was in fact the true, original, and first inventor and owner of the inventions, and relying upon said statements and representations, consented to and did, on or about said November 24, 1902, enter into a contract with the said Hien. It is not necessary to state the terms of the contract with particularity, but it gives and grants to Westinghouse the exclusive right to make, sell, and use the invention, and Westinghouse agrees to pay a certain royalty on all friction draft and buffing apparatus made and sold by him, whether under the invention assigned by the contract or otherwise. A large sum was paid under the contract, but on July 1, 1905, further payment was refused, on the ground that the contract conveyed nothing, and was made by mistake of fact.

The bill further alleges that, according to the practice of the United States Patent Office, no interference is declared until the Office has determined that the subject-matter in interference is patentable; and that by virtue of said practice, when said appellees Hien and Chamberlin informed appellants tha said interference with said Shepard was pending, appellants understood and believed, and were warranted in understanding and believing, that both applications disclosed patentable subject-matter.

It is also alleged that both appellants and appellees Phillip Hien and Walter H. Chamberlin were mistaken as to the fact of said patentable subject-matters being separate and distinct subject-matters; that upon the hearing of said interference in the Patent Office it was contended on the part of Shepard that the said patentable subject-matters were in fact one and the same, and that an interference in fact existed, and that Shepard was the first and original inventor of the said patentable subject-matters; that, upon the part of Hien, it was contended that the said patentable subject-matters were in fact separate and distinct, and that no interference in fact existed; that said contentions were fully argued before and considered by the Primary Examiner in said Patent Office and also before the Commissioner of Patents in person on appeal; and the Commissioner of Patents decided that the said patentable subject-matters in interference were in fact one and the same; that an interference in fact existed, and that Shepard was in fact the first and original inventor of said patentable subject-matter, and was entitled to letters patent of the United States therefor; that said determination was and is the final determination of said Patent Office in said interference proceedings; that no appeal therefrom to the Court of Appeals in and for the District of Columbia was had or taken; or any other proceedings in said Court of Appeals to review, modify, or set aside said final determination; and that afterwards, and in consequence of the said final determination of said Patent Office, letters patent of the United States, No. 769,841, dated September 13, 1904, were granted to the said Louis A. Shepard, as assignor to Cornelius Vanderbilt, said letters patent containing claims for the subject-matter in issue in the said interference between the said application of the said Shepard, and the said application serial No. 116,187 of the appellee Hien, and that on or about the 2d day of October, 1905, the said United States Patent Office, acting by its Primary Examiner, formally and finally rejected the said claims, 1, 3, 4, and 13 (the claims involved in said interference) of the said application No. 116,-187 of appellee Hien, pursuant to rule 132 of the Patent Office, and refused to grant and issue to the said defendant Phillip Hien letters patent of the United States upon said four claims.

The applications of Shepard and Hien each contained a number of claims, and four of the claims in each disclose a broad, generic invention of draft gear and buffing apparatus. The four Hien claims, when compared with the four Shepard claims, appear to be identical in substance, and show an almost complete identity of language; but the devices accompanying the applications. are quite different, although apparently operating along the same lines. The representations made by Hien and Chamberlin to Westinghouse that the patentable subject-matters of the two applications were in fact separate and

distinct, appear to have been based on the difference of construction shown by the drawings. The eight claims in question follow:

Alleged Hien claims 1, 3, 4, and 13 are:

"1. A device of the character described comprising a series of resilient elements having inclined frictional surfaces adapted when said series of elements are subjected to compression to be relatively moved thereby placing said resilient elements under tension."

"3. A device of the character described comprising a series of resilient rings having inclined frictional surfaces adapted when said series of rings are compressed to be relatively moved thereby placing said rings under tension."

"4. A device of the character described comprising an expansible resilient ring and a compressible resilient ring, said rings having complemental inclined engaging frictional surfaces."

"13. In an apparatus of the character described, an open spring ring having an inclined frictional surface adapted to be engaged by a similarly inclined surface to impart tension to the ring."

The alleged corresponding claims in Shepard's patent are:

"14. A device of the character described comprising a series of resilient elements having inclined frictional surfaces, adapted when said series of elements are compressed to be relatively moved, thereby placing said elements under tension."

"13. A device of the character described comprising a series of resilient elements having inclined frictional surfaces, the surfaces on adjacent elements adapted when said series of elements are subjected to compression to be relatively moved through engagement with each other, thereby placing said resilient elements under tension."

"15. A device of the character described comprising an expansible resilient element and a compressible resilient element, said elements having complemental inclined engaging frictional surfaces.

"16. In an apparatus of the character described, an open spring element having an inclined frictional surface adapted to be engaged by a similarly inclined surface to impart tension to the element."

Payments under the contract, and expenses in the Patent Office and in the applications for patents, all paid by Westinghouse and the Westinghouse Air Brake Company, amount on the whole to $44,700. Such payments covered the amounts stipulated in the contract up to July 1, 1905, when the appellants refused to make further payments. Hien then brought an action of covenant to recover royalties under the contract for July, August, and September, 1905, and this bill was brought in February, 1906, to stay the action of covenant, to rescind the contract of sale, and for an accounting and repayment of all sums paid under the contract.

A demurrer to the bill was interposed, the third ground of which is that the suit cannot be maintained until there has been a final adjudication upon the application and claims of the appellee Hien. The Circuit Court sustained this ground of demurrer, and a decree followed dismissing the bill. This appeal is taken from such decree.

Charles P. Abbey, for appellants.
D. S. Wegg and Walter H. Chamberlin, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). The question whether appellants are entitled to relief in any court was fully argued on the hearing, but at this stage the only question necessary to be considered is whether the Circuit Court was right in dismissing the bill as prematurely brought. This depends on the statutes relating to the issue of patents, and the rules and practice

of the Patent Office. When an application for a patent is filed, an officer known as the "Primary Examiner" decides whether the application on its face shows a patentable invention. Rules 95, 96. No appeal lies from his decision. Rule 124. Patentability being affirmed, it may occur that the application discloses the same invention as another application on file or as a patent already issued. If so, an "interference" exists, and the patent officers are then required, according to the practice and rules of the office, to set on foot an interference proceeding, in order to determine which of the hostile claimants first discovered the invention. This proceeding is carried on before the Examiner of Interferences, and is a proceeding inter partes, and results either in a decision awarding priority to one, and denying it to the other, or for some particular reason denying priority to either.

This question of priority of invention, meaning priority in time, has become the important and almost the sole question for consideration in the interference proceeding. Other questions may arise in the Patent Office, such as whether one or both parties has the right to make claim, whether he has really disclosed in his drawings the invention claimed, whether he is the real inventor, whether he is guilty of laches or estopped to claim priority, whether his device is operative, whether both claim the same invention so as to actually show interference. By the course of practice in the Patent Office, however, the interference proceeding is confined to the question of priority in time, other questions being raised by motion before the Primary Examiner. The Examiner of Interferences may also call the attention of the Commissioner to facts showing that no interference exists, or that the declaration of interference was irregular, and the Commissioner may then suspend the interference proceedings, and remand the case to the Primary Examiner for consideration of the questions so raised. Rule 126. It may also appear in the interference proceedings that while both applications disclose patentability and interference, and one is clearly prior in time, yet that neither party is entitled to a judgment of priority against the other, because it would operate inequitably against the other. This happened in Bechman v. Wood, 15 App. D. C. 484, hereafter commented on, where Wood first discovered a broad invention, but made only a narrow claim, and the junior applicant, Bechman, claimed a specific device in the same field, and also claimed the broad invention. Wood was adjudged not entitled to the broad claim because this would defeat Bechman's specific apparatus, and Bechman was not entitled to it because he was not the first inventor. But in the ordinary case an award of priority follows as a matter of course.

While the question whether the interference was properly declared, or any interference in fact exists, cannot be directly raised in the interference proceeding, it may be by a motion to dissolve the interference. It is the practice to present to the Examiner of Interferences a motion to transmit the motion to dissolve to the Primary Examiner, together with the motion to dissolve. If the latter motion is in proper form he transmits it to the Primary Examiner, and he may at the same time proceed with the interference. Rule 123. When the Primary Examiner has decided the motion, an appeal may be taken to the Commissioner, but no further appeal is permitted, the motion being regard-

ed as an interlocutory proceeding. U. S. ex rel. Lowry v. Allen, 203 U. S. 476, 27 Sup. Ct. 141, 51 L. Ed. 281. If the motion to dissolve is denied, the Examiner of Interferences, in the usual case, renders judgment awarding priority of invention to one of the contestants, and also fixes the limit of appeal from such judgment. If no appeal be taken letters patent are issued to the successful party, and the Primary Examiner notifies the other party that his claims stand finally rejected. Section 4904, Rev. St. (U. S. Comp. St. 1901, p. 3389). Rule 132. If the defeated party desires to appeal he may do so within the time limited. The appeal first goes to the examiners in chief (section 4909 [U. S. Comp. St. 1901, p. 3390]), then to the Commissioner in person (section 4910 [U. S. Comp. St. 1901, p. 3391]), and from his decision to the Court of Appeals of the District of Columbia (Act Feb. 9, 1893, c. 74 (27 Stat. 436, § 9 [U. S. Comp. St. 1901, p. 3391]). No such appeal was taken in this case; and the chief question is whether such an appeal would have reached the issue of interference in fact, raised by the motion to dissolve. Appellants contend that this appeal reaches this and all other fundamental questions, like that of the right to make claim; while appellees assert that they come within the first provision of section 4909, allowing every applicant for a patent whose claims have been twice rejected to prosecute ex parte appeals to the Examiners in Chief, the Commissioner and the Court of Appeals.

Before examining this question it should be stated that the practice in the Hien-Shepard Case was substantially as indicated in stating the Patent Office practice. Interference was declared, Hien moved to dissolve it, was beaten, appealed to the Commissioner, was again unsuccessful, and priority was awarded to Shepard, he having filed a long time before Hien. A patent was issued to Shepard September 13, 1904, and the Primary Examiner formally rejected Hien's claims October 2, 1905. The time limited for the appeal is fixed by section 4896 (U. S. Comp. St. 1901, p. 3384) at one year, so that, on February 1, 1906, when this bill was filed, Hien's right to appeal, as he claims, had not expired. On this ground the Circuit Court dismissed the bill, as prematurely brought, since it might happen that Hien would obtain a patent after all.

We now come to the important question of the case. Was the decision of the Examiner of Interferences, awarding priority to Shepard, a final judgment which, not appealed from, settled all questions in Shepard's favor, so as to finally destroy the possibility of Westinghouse obtaining the inventions assigned to him by the contract? Or, might Hien, at any time within a year after the final rejection of his claims, appeal or take further proceedings, and show, if he could, that Shepard had no right to make his claim, or that his four claims, read on the Shepard device were substantially different when read on his own, and thus obtain a patent on the four claims? As a theoretical problem, or a question of first impression, it would appear to be clear that the interference proceeding logically involves the fundamental question whether there is, in fact, any interference, whether one or both claims be patentable, and whether either party has the right to make the claim. A judgment of priority would seem to have no force if the rival claims do not conflict, or if the junior claim be not patentable, or either

party be not the real inventor. Likewise, it would seem that an appeal from the judgment of priority should raise these fundamental questions, and the result on appeal dispose of the whole case, and all these questions. But such has not been the rule of the Patent Office, nor of the Court of Appeals.

By the rule actually in force in the Patent Office the term "priority of invention" is used in the narrow sense of first in time, and not as involving interference in fact or the right to make claim. And this limited meaning is also given it by Mr. Justice McKenna in U. S. ex rel. Lowry v. Allen, 203 U. S. 476, 27 Sup. Ct. 141, 51 L. Ed. 281. This use of the term seems to have resulted from the practice of trying the questions of interference in fact and right to claim by motion before the Primary Examiner, and thus treating these as interlocutory questions. Since priority means only first in time, a judgment awarding priority is deemed to establish only that the successful party was the first inventor of the device or article claimed by him, without involving the question whether he had the right to claim it, or whether the other party claimed in substance the same invention. This conclusion has been reached many times in the decisions of the Patent Office and Court of Appeals. The judgment of priority is not a direct decision that the defeated party is not entitled to a patent, and he may appeal, ex parte, from the final rejection of his application. Ex parte Schupphaus, 100 O. G. 2775, 1902 C. D. 339; Ex parte Guilbert, 85 O. G. 454, 1898 C. D. 225. The right to make the claim does not relate to priority of invention, but should be presented on a motion to dissolve. Woods v. Waddell, 106 O. G. 2017, 1903 C. D. 393. The question of interference in fact will not be considered on appeal from a judgment awarding priority. Schupphaus v. Stevens, 95 O. G. 1452, 1901 C. D. 369, citing many cases in the Court of Appeals; Ex parte Lyon, 124 O. G. 2905.

It is true that the Court of Appeals has held that it will, in extreme cases, on appeal from a judgment awarding priority, review the decision of the Commissioner declaring the interference, or refusing to dissolve it. This was held in Seeberger v. Dodge, 24 App. D. C. 476 (1905); and the same conclusion is stated, though not actually applied, in Podlesak v. McInnerney, 26 App. D. C. 399, 120 O. G. 2127 (1906). But this is quite a different thing from holding that in all cases, including this, a judgment establishing priority in time settles the question of interference in fact, and precludes the defeated party from ever raising that question, by further proceedings in the Patent Office. The Podlesak Case, supra, is relied on by appellants as conclusive. But the Court of Appeals in that case, as appellants admit and expressly state, refused to reverse on the ground that there was no interference in fact, but remanded the case to the Commissioner for further consideration as to identity of invention, with the statement that, if the Commissioner should adhere to the opinion that there was interference in fact, the court would further consider the case. This falls far short of a decision that a judgment of priority necessarily involves the question of identity or interference.

It will also be seen from the statement of facts that the right of Shepard to make his claims has never been adjudicated inter partes

in the Patent Office. It may ultimately appear that the Shepard claims when read on Hien's device mean a different thing when read on the Shepard device; so that Hien, after all, will be entitled to his four generic claims. It does not appear from the bill that any of these matters have been finally determined or concluded.

Bechman v. Wood, 15 App. D. C. 484, is also cited to support the argument that a judgment on priority involves the question of interference in fact. We do not so regard it in view of the conclusions reached by the court in the opinion on rehearing, whatever may be thought of the first opinion. It may be added that the case was an unusual one, and so treated by the court. In that case Wood actually discovered a broad, generic invention, but in filing his application did not make the broad claim, limiting his application to his specific device. Later, Bechman invented a specific mechanism in the same field, one which would have been absolutely dominated by a broad claim had Wood filed one; and Bechman filed an application claiming both the broad, generic invention, and the specific one covered by his apparatus. Wood then amended his application so as to make the broad claim, and thus cover the specific claim filed by Bechman. Thus the case presented quite unusual features, and the decision rests to a considerable degree on the peculiar facts presented.

The court, in its first opinion, held Wood's device operative, and that he was prior, if the two inventions were one and the same. Judge Morris, in the opinion, said that it would be manifestly improper to award a judgment of priority when there was no interference—no identity of subject-matter; that Wood was the first inventor of the special mechanism claimed by him, and incidentally of a broad invention, but one which he did not claim, Bechman being the first to set up such broad claim. But Bechman could not be awarded priority of the broad claim because not the first inventor, nor could Wood be adjudged priority of it, because a patent covering it would sweep within its control all special inventions in the same field previously made, and thus be unjustly retroactive, since Bechman was entitled to the specific device claimed by him. Wood sought by amendment to include the broad claim in his specifications, but it was held that the power of amendment did not reach to the extent of displacing specific claims made in the same field before the amendment. Direction was given that there should be no priority for either party with reference to the broad claim, but that both were or might be entitled to patents for their respective devices.

On petition for rehearing it was urged by the parties, and also on behalf of the Patent Office, that the original opinion had seriously affected the rules of practice of the Office. It was argued that it had been the long established practice to make the generic claim the issue of the interference, and put the specific claims under the broad issue; and that the court exceeded its jurisdiction in declaring that there was no interference in fact. The court said that its decision had been greatly misapprehended; that it did not interfere with the power of amendment, but simply declared the effect of the amendment when allowed; and adhered to its decision to the effect that an amendment could not contravene existing or intervening rights, nor overrule the

settled principles of law. It was proper for the second applicant to make the broad claim, and thereupon for the first applicant to so broaden his specific claims as to present the same generic claim; and then it was right and proper that an interference should be claimed, which was, in fact, unavoidable with or without amendment. So far from holding that there was no interference in fact, the court said it could not see how the Office could have failed to declare it in respect to the broad claim, although none existed as to the narrow claim of each party. But Bechman could not be allowed the broad claim, because that would have dominated the invention of Wood, who was his predecessor in the same field; nor could that predecessor be allowed the broad claim because he had not advanced it before the arrival of Bechman on the field of invention. Neither party, under the special circumstances of the case, was entitled to prevail against the other on the broad claim.

It was further held that, as a general proposition, it was entirely correct that neither patentability nor the propriety of the declaration of interference is open to consideration in an interference case, but the decision is not inconsistent with this rule, under the peculiar circumstances of the case. The same conclusion was reached as on the first hearing.

In view of the practice and course of decision in the Patent Office and Court of Appeals, and of the fact that the question of Shepard's right to make his claims has never been determined inter partes, it would be quite unjust to hold that Hien was absolutely bound on all matters by the judgment of priority. To a considerable extent the issue of a patent is the exercise of executive power, only incidentally involving private rights cognizable by the courts; and for this reason, also, the practice should be respected in judicial contests, although deemed somewhat variant from that contemplated by the statutes.

The decree appealed from is affirmed.