### A. MECKY CO. v. GARTON TOY CO.

(District Court, E. D. Wisconsin. September 24, 1921.)

1. **Patents ⊙⟹319(1)—Profits on infringing article may be considered in determining reasonable royalty.**

   While a reasonable royalty charged against an infringing manufacturer need not be measured by the profit actually made without the royalty, the entire profit made on the article containing the infringing part may be considered in determining what would be a reasonable royalty.

2. **Patents ⊙⟹319(1)—Reasonable royalty is probable agreement between two parties willing to make license contract.**

   The reasonable royalty of a patentee from an infringer should be fixed by endeavoring to ascertain what the two parties would have agreed on, if the patentee was willing to grant a license on terms enabling its use and which the infringer desired to obtain.

3. **Patents ⊙⟹318(4)—Patentee not entitled to all profits from sale of velocipede containing patented hub.**

   The owner of a patent for a hub for velocipedes is not entitled to recover from an infringer all the profits made by the infringer on the sales of velocipedes containing the patented hub, unless it is impossible, either inherently or because of the infringer's conduct, to segregate the profits on the infringing hub.

4. **Patents ⊙⟹319(1)—Royalty may exceed infringer's profits.**

   The mere circumstance that damage for infringement awarded on the basis of reasonable royalty exceeds the profits which the infringer in fact made is not alone ground for treating the award as excessive.

5. **Patents ⊙⟹322—Master's finding, not involving credibility of witnesses who testified orally, not entitled to weight.**

   The ordinary rule in patent infringement suits, that the finding of the master on matters of fact is to be given weight, loses its significance when the testimony is such that the matter of credit to be accorded to an individual witness, whom the master saw and heard, is eliminated.

6. **Patents ⊙⟹319(1)—One dollar royalty for infringing article held excessive.**

   In a suit for infringement of a patent for velocipede hub, where the evidence showed that the defendant sold the velocipedes containing the infringing hub at $3.50 or less, thereby realizing a profit of 90 cents, and that a license under the patent would not have given the defendant a monopoly which would have enabled him to increase his sale price, *held* to show that the master's award of $1 as reasonable royalty for each infringing article was excessive, and should be reduced to 40 cents.

7. **Patents ⊙⟹319(1)—Willfulness of infringement does not enter into determination of reasonable royalty.**

   The circumstance of defendant's willful infringement, or any other circumstance of an aggravating character merely personal to parties, should not enter into the determination of a reasonable royalty for the

---

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

use of the patent, though the statute contemplates that damages, once fixed, may in the contingency of willfulness be enhanced, if the court sees fit to do so.

In Equity. Suit for infringment of a patent by the A. Mecky Company against the Garton Toy Company. On exceptions to report of the special master in the accounting proceeding pursuant to the decree. Master's report modified.

E. Hayward Fairbanks and J. Bonsall Taylor, both of Philadelphia, Pa., and John W. McMillan, of Milwaukee, Wis., for plaintiff.

Bottum, Hudnall, Lecher & McNamara, of Milwaukee, Wis., for defendant.

GEIGER, District Judge. The case is before the court upon exceptions to the report of the special master in the accounting proceedings pursuant to the decree. Although numerous exceptions have been filed, the parties agree that there is really but one question, the finding and award of damages to the complainant upon the measure of $1 as a reasonable royalty upon each of the infringing structures made and sold by the defendant. It is conceded that the defendant made and sold approximately 15,800 infringing structures, the aggregate selling price being approximately $49,000.

As a preliminary to a consideration of the question submitted, reference may be made to the record in its disclosure of matters bearing pertinently upon the inquiry made by the master, respecting profits arising upon manufacture and sale, and by this is meant the ordinary manufacturing and selling profits. The defendant, in response to the equity rule, filed its account in debtor and creditor form, giving on the one hand the items entering into manufacturing and selling costs; on the other, the sales; the account balancing by disclosure of profits in the sum of $9,208.65. It appears that, upon this account, either with or without exception to specific items, inquiry was made through reference to the defendant's books and records with the aid of skilled accountants, for the purpose of testing the accuracy of the disclosure. The master, after noting the profit conceded by the defendant, observes:

"The account is unsatisfactory as to the actual labor and material cost entering into the infringing velocipedes, and as to the overhead is a mere arbitrary charge. It appears from the testimony of Mr. Whitehead, secretary and treasurer of defendant company, and that of Mr. White, the accountant employed by the complainant, that it is impossible to obtain the actual cost of either labor, or material from defendant's books of account and records. The account filed by defendant shows greater credit for material cost than the computation made by Mr. White, and no real check could be made from any available data. There is no proof of sales lost by complainant by reason of this computation. Complainant had never been granted licenses for the use of its invention. The one satisfactory method of determining the measure of damages suffered by complainant by reason of the wrongful act of defendant would seem to be the determination of such sum as under all circumstances would have been a reasonable royalty for the defendant to have paid for such use."

After considering testimony bearing upon reasonable royalty, the master reports:

"* * * * That it is impossible to make a satisfactory computation of the actual profits, gains, and advantages which have accrued by reason of said infringement; that the damages to the complainant by reason of the said infringement by the defendant are the sum of $15,592."

Respecting the determination that $1 per velocipede sold would be a reasonable royalty, the master remarks:

"While this determination results in an amount in excess of the total profits as shown by defendant's account on the sale of infringing velocipedes, yet, as indicated, such profits are not based on actual, but on estimated, cost, which cannot be checked. Further, it appearing to the master that infringement was willful, and after an actual notice of complainant's claims, continued during the progress of the litigation, the sum of $1 per infringing velocipede manufactured and sold by the defendant company is deemed under all the circumstances, and taking into account the nature of the invention and its advantages, and the additional value given to the completed velocipede, a reasonable royalty, and a proper measure of complainant's damages by reason of the infringement."

If upon an accounting in a patent case, the profits and the damages may be severally inquired into and determined, leaving it to the plaintiff to elect which he shall ask to be awarded by the judgment, the defendant probably cannot complain if but one or the other is in fact determined upon the hearing—assuming that the evidence, though "unsatisfactory," would enable determination of both. Therefore, in this case, the failure on the part of the master to fix and determine the profits, if the evidence warranted it, may not be ground for just exception, nor furnish a basis for overthrowing an award of damages. The parties here seem quite agreed that it is entirely permissible to ascertain damages through a determination of a reasonable royalty for the use of the invention, and that in determining such question resort may be had to all competent and pertinent proofs available to the parties.

And while the defendant takes the position that upon the evidence the plaintiff was not entitled to a determination of profits, because it failed to discharge the burden of proving profits attributable to the invention, it likewise concedes that upon the record the master could not escape determining that the defendant made a total profit of $9,200 approximately upon the sale of the devices which contained the patented hub. Therefore the defendant urges—regardless of the tenability of its claim that if the master were dealing with the single issue of assessing attributable profits the burden required of the plaintiff to show a segregation had not been discharged—that the evidence concerning aggregate profits must break down the master's finding of reasonable royalty as being unwarranted in amount.

Counsel calls attention to the testimony in the record upon which the plaintiff relies in support of the reasonable royalty finding. Two witnesses testified that in their opinion $1 per velocipede would be a reasonable royalty. One of these witnesses probably did not qualify to speak upon the subject. The other was allowed to qualify—an ob-

jection made being to materiality of the testimony, and not to want of qualification—by stating that his experience enabled him to testify. As noted by the master, no royalty contracts had ever been made, and apparently the infringing competition did not enable plaintiff to claim a loss of sales.

While the master characterized the evidence respecting profits as "unsatisfactory," and upon an argument before the court counsel for the plaintiff placed some stress upon the inability of witnesses, expert accountants, to fix accurately items of cost, I do not believe that the situation was substantially different from that found in many cases where profits are in fact determined. Where a manufacturer is engaged in diversified lines, his books are rarely kept—and by that I mean his regular account books—so that, upon turning to them, the factory cost of one line, or a single article, is readily disclosed. True, cost, systems, or so-called "efficiency methods," may be introduced as a part of a manufacturer's record, which will disclose unit costs. But in such cases the same method is from day to day required to be pursued as must be pursued upon inquiry into costs, and the like, where no such record is kept. Reference is made to overhead. There are few cases in which overhead and its proportional allotment to various lines in a single factory is not entirely a matter of judgment or estimate; and, of course, no matter what the basis of allotment, it is in a sense arbitrary.

Now, these observations are preliminary to a consideration of two propositions:

[1] First. That upon the record as made by the parties a finding that the defendant made a profit of approximately $9,200 upon the sale of the velocipedes embodying the patented hub would not only be unassailable, but fair—certainly fair in the sense that defendant could not complain, because it conceded such to be the fact. It is approximately 22½ per cent., clearly, as a matter of common knowledge, not an abnormally small manufacturing profit. It may not be abnormally large, but, when considered in connection with the total sales price and the absence of a claim that the defendant was selling its structure at low price, shows that, although an infringer, it did nothing abnormal in the way of surprisingly low costs or high selling prices to bring about abnormal profits. Therefore the defendant manufactured the velocipedes at a cost of approximately $2.50 or $2.80 each, enabling a profit of 80 to 90 cents upon a sale from $3.30 to $3.50 each. It is fair to assume that both plaintiff's and defendant's structures are not, and cannot be, considered as susceptible of sale—by the manufacturer —at a figure very greatly in excess of these amounts.

Clearly the question respecting reasonable royalty may be well tested by asking whether a manufacturer, who, without a license burden, manufactures and sells at approximately $3.30 to $3.50 to make a profit of 22½ per cent. as against competitors (the record shows that the parties have eight or ten rivals), who likewise are not burdened with a license royalty upon the patented hub, could in any event add to his manufacturing cost and profit a burden of $1, or nearly 33⅓ per cent., and still compete? It is true, as this court observed in the

Beckwith Case, 247 Fed. 795, that the royalty need not be measured by the profit actually made without the royalty; but it is also true that royalty payments must be considered by manufacturers as items of cost, and if, in a survey of the competitive field, it is found that the royalty cost of an ingredient entering into a structure will wipe out the profit, or make it hazardous, when due consideration is given to the fact that the patented ingredient may not dominate the competitive field, then the ratio of the royalty to the normal cost, plus profit, may be most persuasive upon the question of the reasonableness of a claimed royalty.

[2] Now, if we ignore for the present the situation of parties in litigation, where one claims the other to have been a trespasser, and approach the consideration of the question, as I think it can be approached, by endeavoring to ascertain what these parties would say to each other, if, being honorable business rivals, the defendant should desire, and the plaintiff should be willing to grant, a license upon reasonable terms; that is, that terms should be discussed which would enable, and not forbid, the defendant's acceptance thereof, and which the plaintiff, as the patentee, should desire to be accepted and not rejected, to the end that, as patentee, it receive reasonable remuneration. Broadly speaking, no terms could be discussed, if they imposed upon the licensed party burdens which forbade his entry into the competitive field, or such as would not make acceptance worth the while. Clearly the terms must be such as exhibit the right of the patentee to reasonable pecuniary reward for the use, but not such as, because of their severity, would simply intrench him in his monopoly by forbidding even an agreed use. They must be such as—on the basis of probability—in the minds of reasonable men contemplate user, and not abandonment, of the granted right.

This all has reference to the practical aspect of a determination of "reasonableness" and the manner in which such determination must be effected. Is it probable that the plaintiff and defendant, thus negotiating, would recognize "reasonableness" to reside in a royalty which added nearly one-third to the defendant's normal burden, assuming that without the royalty he could manufacture upon an equality with the plaintiff? Is it possible that, if the plaintiff and defendant could each manufacture the article at $3 and at a profit of from 20 to 30 per cent., the defendant, for the sake of introducing the plaintiff's novel construction, would assume such a burden and as a practical matter endeavor, not only to get his former normal profit, but an augmented profit, because of the augmented cost: that plaintiff could continue to sell at a profit at $3, but that defendant could readily compete by selling at $4: and that their respective distributors could freely compete upon the same or relatively greater differences which ultimate retail selling prices would exhibit? This leaves out of consideration a second proposition, which, if the court were considering an award of profits, can hardly be left out of the case, viz.:

[3] Second. That the profit, which is recoverable, ought to bear some relation to the patented structure, whose use by the defendant constituted the infringement. While it is true that in the present

case the patented structure was the hub, enabling the assembling of what the parties have called a "take-apartable" velocipede, and also that the patented structure contributed to the advantages and to the salability of the velocipede, the plaintiff was not, as a matter of law, entitled to the profits derived from the sale of the velocipede, in the sense that the velocipede as a whole constituted the infringing article. In other words, if upon adoption of some fair method, the profit made through the use of the hub could be segregated from the profit attributable to the saddle, the handle bar, the tire, or other elements of the structure, the plaintiff could claim no more as profits. Of course, the situation may have developed so that it would have been impossible, either inherently, or because of the conduct of the defendant, to segregate, and therefore the defendant could not have complained if the assessment of the total profits realized upon a sale of the entire structure had been made.

But no such question is here raised, and the case was not disposed of by the master upon the hypothesis that the profits to be attributed to the patented hub could not be ascertained, but that the evidence was unsatisfactory, dealing apparently with the evidence showing the profits—22½ per cent.—made upon sale of the entire structure. This is referred to with the idea that the profits of $9,200 approximately made upon the aggregate sales of velocipedes would probably prove considerably in excess of any apportionment which rationally should be made of profits attributable solely to the infringing feature, viz. the hub, of defendant's construction; and it all fortifies the suggestion above made that, were the parties dealing with each other for the purposes of ascertaining reasonableness of a royalty, neither of them could accede to a burden of $1 added to normal manufacturing cost of the velocipede embodying the patented hub.

[4] As already observed, the mere circumstance that damage awarded upon the basis of reasonable royalty may exceed the profits which the infringer in fact made is not alone ground for treating the award as excessive. In the Beckwith Case, the damages awarded were greatly in excess of the profits apportioned to the infringing structure. But upon the record in that case the royalty determined bore a reasonable relation to the manufacturing cost of the structure; and the amount of such royalty could be fixed upon a more liberal basis, because the infringing structure formed a part of a larger structure in combination with which it was used, the manufacturing and selling cost of the whole being such that the royalty fixed was one which, in the competitive field, could without difficulty be absorbed as an item of cost; and it is significant that, despite the results obtained by skilled accountants in their attempts to segregate or apportion profits, the Court of Appeals was apparently inclined to view the profits as having been determined at too low, or at least at a very moderate, figure.

[5] The court is not unmindful of the ordinary rule which requires finding of a master upon matters of fact to be given weight. The rule, however, loses its significance, when upon a record the testimony is such that the matter of credit to be accorded to an individual witness,

and depending upon the fact that the master saw and heard the witness, is eliminated. The question is whether the award, based, as it is, upon the mere statement of two witnesses who name that sum as a matter of opinion, and who apparently were not called upon to test out the fairness of their estimate by a consideration of what has heretofore been alluded to, ought to stand. Conceding to the full the great practical character of the rule for estimating damage upon a reasonable royalty basis, there are two dangerous tendencies which may develop in its application: The one is undue liberality in respect of the proofs requisite to make out the case, as a result of which the awards become so high as to induce patentees to countenance infringement; the other is such strictness or inadequacy as will promote freedom to commit infringement.

[6] It seems to me that in the present case, when an effort is made to fix the reasonable value of the use in the manner indicated, an award of $1 as a reasonable royalty is excessive upon any fair view of the record. It is true that, when an effort is made to fix another amount, the final act of determination—as noted with respect to profits—must have an element of the arbitrary. That is true whenever the patentee, in the absence of proof which in some cases he can adduce, rests his case upon what are more or less arbitrary opinions. In such case I think the court may well say that the opinions as such are not at all conclusive; that, if given by witnesses who are highly interested, the court may subordinate them wholly to such facts as a jury might consider as dominating, and prompt them to arbitrate, as best they can, the amount. It is my judgment that, if this proposition were for consideration, having in mind the competitive field, the number who are engaged as workers therein, the limit of cost and selling price, which is fairly constant in such structures as the parties are manufacturing (I think this is a matter of common knowledge) royalties of not less than 25, or more than 50, cents per structure would be agreed upon as meeting the requirement of reasonableness.

[7] It is quite clear that in the application of the rule care should be taken to ascertain reasonableness of a royalty as of the time and under the circumstances attending the commencement and duration of the infringement, but wholly regardless of circumstances, which though doubtless existing and possibly of an aggravating character, are merely personal to the parties, and for that reason should not enter into determination of the broad question: What would be or is a reasonable royalty? This question, after all, should be determined very much in the manner of determining reasonable or market value in any buying or selling situation. The circumstance of the defendant's willful infringement ought not therefore, to enter into a determination of reasonableness. The statute evidently contemplates that damages, once fixed, may in the contingency of willfulness be enhanced, if the court, in its discretion, sees fit to do so. It is my judgment that a royalty of 40 cents, instead of $1, is a fair basis for computation of the damage in the present case, and the report may be modified accordingly.

277 F.—33

The plaintiff has called attention to two matters by way of motion (which I shall treat as equivalent to exceptions) to correct the master's report. The master's findings may be modified to disclose the number of infringing structures shown by the defendant's second report, and interest may be awarded upon the amount fixed as royalty damage, as requested by the plaintiff.

An order may be entered, modifying the master's report, as indicated in this opinion.