## DUNKLEY CO. v. CENTRAL CALIFORNIA CANNERIES et al.

(Circuit Court of Appeals, Ninth Circuit. September 14, 1925. Rehearing Denied October 19, 1925.)

### No. 4478.

**1. Appeal and error ⚖➡1195(1)—Opinion on appeal from interlocutory decree law of case in subsequent proceedings.**

Opinion on appeal from interlocutory decree is law of case in subsequent proceedings.

**2. Appeal and error ⚖➡1022(1)—Findings of master on questions of fact are entitled to great weight, particularly where approved by District Court.**

Findings of master on questions of fact are entitled to great weight, particularly where approved by District Court.

**3. Patents ⚖➡312(1)—Plaintiff has burden of proof of profits with which defendant is chargeable.**

Plaintiff in patent suit has burden of proof of profits with which defendant is chargeable, which includes showing of advantage or profit from use of infringing machines and value in dollars of such advantage.

**4. Patents ⚖➡318(3)—Profits for which infringer chargeable must be actual, not merely possible.**

Profits for which an infringer must account are the fruits of the advantage enjoyed from use of invention, compared with other means open to public and productive of equally beneficial results, and must be actual, not merely possible.

**5. Patents ⚖➡312(2)—In infringement suit, proof of other means for producing same result as was attained by use of infringing device competent.**

In suit to enjoin infringement of patent, consisting of peach-peeling machine, and for accounting, proof of other means of peeling peaches, available to defendants at time of infringements, *held* competent.

**6. Patents ⚖➡246—Where patent is mere combination of old elements, one using device omitting one of material elements does not infringe.**

Where patent is mere combination of old elements, one using device omitting one of material elements does not infringe.

**7. Patents ⚖➡318(1)—Defendants held not chargeable with profits, in absence of showing of value of advantage attained by use of infringing device.**

In suit to enjoin infringement of patent, consisting of device for peeling peaches and for accounting of profits, where there was no showing as to the value in dollars of the advantage attained by defendants in use of infringing device, it was not error to hold defendants not chargeable with profits.

**8. Patents ⚖➡312(2)—Testimony by accountant, not practical user, as to what would constitute reasonable royalty, held improperly admitted.**

In suit to enjoin infringement and for accounting, testimony by accountant in plaintiff's employ, and one not a practical user of the patented device, as to what would be a reasonable royalty for such use, *held* improperly admitted.

**9. Patents ⚖➡319(1)—Established price for license to use patented machine may be taken as measure of damages against infringers.**

Where there is an established legal price for a license to use a patented machine, that price may be taken as a measure of damages against infringers, liable for reasonable royalty.

**10. Patents ⚖➡319(1)—License contracts held too few and too late in time to establish market value of license as basis for award of reasonable royalties.**

Seventeen contracts granting licenses to use patented machine, executed during period of six years, and after time of infringement complained of, *held* too few in number and too late in time to be used as a basis for determining market value of license as of time of infringement, particularly where at time of such contracts patented machine had been materially improved.

**11. Patents ⚖➡319(1)—Royalties awarded in infringement suit should be fixed in light of conditions which obtained when infringements took place.**

Royalties awarded in infringement suit should be fixed in light of conditions which obtained when infringements took place.

**12. Patents ⚖➡129—Infringers cannot dispute utility.**

Infringers, using machines embodying patent, cannot be heard to dispute its utility.

**13. Patents ⚖➡319(1)—Court should base finding as to royalties on nature of invention, its utilities and advantages.**

Court, in fixing royalty, may base its finding on evidence showing nature of invention, its utility and advantages.

**14. Patents ⚖➡322—Refusal to extend accounting to cover defendant's use of other machines than plaintiffs held not error.**

In suit to enjoin infringement of patent and for accounting, refusal of court to extend the accounting to cover use by defendants of other machines than plaintiff's *held* not error.

**15. Patents ⚖➡106(1)—An interference proceeding involves only question of priority as between parties.**

An interference proceeding involves only question of priority of invention as between parties to proceeding.

**16. Patents ⚖➡325—Allowance of compensation to master and division of costs between parties approved.**

Allowance of $12,000 as compensation to master, and division of costs equally betweeen

plaintiff and defendants, in suit to enjoin infringement and for accounting, *held* not error, in view of nature of case and time consumed.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California.

Suit by the Dunkley Company against the Central California Canneries and others. From a decree of District Court, confirming the master's report, plaintiff appeals. Affirmed.

Plaintiff is the owner of patent No. 1,104,-175, for a peach-peeling machine, granted July 21, 1914. It brought separate suits against the defendants in the District Court for the Northern District of California, Southern Division, charging the infringement of its patent and praying for injunctive relief and an accounting. On stipulation the court ordered that the cases be heard on the same testimony and proofs. On the 8th of December, 1916, plaintiff secured an interlocutory decree adjudging that the defendants had infringed, and referring the cause to H. M. Wright, the master in chancery, for an accounting as to the profits realized and the damages suffered. Anderson-Barngrover Manufacturing Company was adjudged to have infringed by manufacturing, and the other defendants by using, machines which embodied the invention protected by plaintiff's patent. The interlocutory decree was affirmed by this court, and on the accounting the master awarded damages to plaintiff against the several defendants in the following sums: J. C. Ainsley Packing Company, $173.09; J. F. Pyle & Son, Inc., $220.53; Golden Gate Packing Company, $432.89; Central California Canneries, $6,349.32; Hunt Bros. Company, $641.80; Sunlit Fruit Company, $975.75; Griffin & Skelley Company, $2,388.12; and Anderson-Barngrover Manufacturing Company, $1. This last defendant was also held chargeable with profits in the sum of $220.-73. Plaintiff excepted to the report, but the court confirmed it, and plaintiff appeals.

Fred L. Chappell, of Kalamazoo, Mich., and W. A. Richardson, of San Francisco, Cal., for appellant.

Pillsbury, Madison & Sutro, of San Francisco, Cal., and Frederick S. Lyon, of Los Angeles, Cal., for appellees Central California Canneries Company, Griffin & Skelley Company, and Sunlit Fruit Company.

Kemper Campbell, of Los Angeles, Cal., for appellees Ainsley Packing Company, Anderson-Barngrover Manufacturing Company, Golden Gate Packing Company, J. F. Pyle & Son, Inc., and Hunt Bros. Company.

Before HUNT, MORROW, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge. The points at issue between the parties have chiefly to do with the scope of plaintiff's patent, the effect of the litigation in which its validity was adjudged, and the extent of the master's authority in passing on the questions in dispute.

In plaintiff's machine the peaches are subjected to a bath in a hot solution of lye for the purpose of disintegrating the skin. They are then delivered to a conveyor, on which they pass between rotary brushes, which turn the peaches so that each peach is subjected to forcible jets of water, which wash off the disintegrated skin. Plaintiff's patent has been before the courts a number of times. There was an interference proceeding in the Patent Office, which found its way to the Court of Appeals for the District of Columbia, where the decision awarded priority to plaintiff's assignor. Dunkley v. Beckhuis, 39 App. D. C. 494, 499. The patent came before this court on appeal from the interlocutory decree in the case at bar. Judge Van Fleet was affirmed. Central California Canneries v. Dunkley Co., 247 F. 790, 159 C. C. A. 648.

Plaintiff also brought suit against Pasedena Canning Company et al. in the District Court for the Southern District of California, Southern Division. This case was determined by Judge Trippet in an opinion reported in 261 F. 203. He held plaintiff's patent void because of anticipation, and he also held that defendants' machine, known as the Pasadena washer, was not an infringement. An appeal was taken from Judge Trippet's decree, and the appeal was determined by an opinion written by Judge Rudkin. 261 F. 386. This court did not find it necessary to pass on so much of the decision of the lower court as held the Dunkley patent void for anticipation. In the light of the evidence presented by that record, it was held that "the Dunkley patents must be limited to the particular means employed, and those means must be limited to directing peeling jets of water upon the fruit as described in the patent." With the Dunkley patent so limited, it was held that the Pasadena washer did not infringe.

In the meantime plaintiff had brought suit against California Packing Corporation in

the District Court for the Southern District of New York. This case was disposed of by an opinion of Judge Augustus N. Hand. 277 F. 989. He held that the defendant was within the protection of a license given by plaintiff to defendant's assignor; also that plaintiff's patent was void for anticipation. The decree was affirmed by the Circuit Court of Appeals for the Second Circuit on the former ground, the court finding it unnecessary to pass on the validity of plaintiff's patent. 277 F. 996.

After Judge Trippet's decision was rendered, defendants moved in the District Court in the case at bar asking that court to request this court to withdraw its mandate of affirmance and to remit the litigation to the District Court for the purpose of receiving additional testimony. Judge Van Fleet handed down an opinion denying this motion. 277 F. 1001. An appeal from this ruling was prosecuted to this court, and the appeal was dismissed. In connection with this appeal defendants filed in this court motions for leave to file in the District Court bills in the nature of bills of review. In passing on these motions Judge Morrow, speaking for this court, reviewed the entire litigation, emphasizing the fact that by a prior decision of this court "the Dunkley invention was limited to the particular means employed." The motions for leave to file bills in the nature of bills of review were denied, but the defendants were "authorized to file in the lower court an appropriate petition for a rehearing," and the District Court was "authorized to entertain and make disposition of the same, according to equity, upon considerations addressed to the materiality of the new matter and diligence in its presentation, without restraint by reason of any proceedings heretofore had or orders made in this court." 282 F. 406. In accordance with the authority so given, a motion to reopen the case was filed by the defendants in the District Court, and denied at a date subsequent to the final decision of the case in the District Court, though prior to the entry of the decree from which plaintiff appeals.

On the original trial of the case at bar the defendants stipulated that they had either used or made a type of apparatus shown by drawings designated as Exhibits A and B. The question actually litigated was not whether these machines were infringements, but whether plaintiff's patent was void because of anticipation. We think the following conclusions were binding on the master

and the parties as the law of the case: (1) That plaintiff's patent is valid. (2) That defendants, in making and using the machines referred to in the stipulation, infringed plaintiff's patent. (3) That plaintiff's patent is limited to the particular means employed, to wit, the removal of the disintegrated skins of the peaches by forcible sprays or jets of water.

[1] The opinion of this court, speaking through Judge Morrow, carrying with it the above limitation of plaintiff's patent, is a part of the law of the case. Thompson v. Maxwell Co., 168 U. S. 451, 456, 18 S. Ct. 121, 42 L. Ed. 539; Mutual Life Co. v. Hill, 118 F. 708, 55 C. C. A. 536; Olsen v. North Pacific Co., 119 F. 77, 79, 55 C. C. A. 665; Empire State Co. v. Hanley, 136 F. 99, 100, 69 C. C. A. 87; Montana Mining Co. v. St. Louis Co., 147 F. 897, 78 C. C. A. 33; D'Arcy v. Jackson Cushion Co., 212 F. 889, 129 C. C. A. 409.

[2] The findings of the master in passing on disputed questions of fact are entitled to great respect. Where, as in this case, they are approved by the District Court, there is a strong presumption that they are correct. Davis v. Schwartz, 155 U. S. 631, 636, 15 S. Ct. 237, 39 L. Ed. 289; Last Chance Co. v. Bunker Hill Co., 131 F. 579, 587, 66 C. C. A. 299; Fullerton Association v. Anderson Co., 166 F. 443, 453, 92 C. C. A. 295; Bemis Car Co. v. J. G. Brill Co., 200 F. 749, 764, 119 C. C. A. 229; Continuous Glass Co. v. Schmertz Glass Co., 219 F. 199, 205, 135 C. C. A. 85; U. S. Frumentum Co. v. Lauhoff, 216 F. 610, 613, 132 C. C. A. 614; Malleable Iron Range Co. v. Lee (C. C. A.) 263 F. 896; Westinghouse Co. v. Wagner Manufacturing Co. (C. C. A.) 281 F. 453. This rule is specially applicable to the case at bar. The record is replete with evidence of the intelligent, conscientious, and painstaking attention given by the master to the determination of the questions referred to him.

[3] In determining the profits with which a defendant in a patent suit is chargeable, the burden of proof rests upon plaintiff. 20 R. C. L. 1177, 1178; Metallic Rubber Co. v. Hartford Co. (C. C. A.) 275 F. 315, 320, 321; Fox Co. v. Underwood Co. (C. C. A.) 287 F. 447, 449. The same rule applies in the assessment of plaintiff's damages. Dowagiac Co. v. Minnesota Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398.

[4] The profits recoverable are actual, not possible, profits. Coupe v. Royer, 155 U. S. 565, 583, 15 S. Ct. 199, 39 L. Ed. 263.

The profits for which an infringer must account are the fruits of the advantage which he derived from the use of the invention, as compared with other means then open to the public and adequate to enable him to obtain an equally beneficial result. Mowry v. Whitney, 14 Wall. 620, 651, 20 L. Ed. 860; Black v. Thorne, 12 Blatchf. 20, 3 Fed. Cas. 525; same case on appeal, 111 U. S. 122, 124, 4 S. Ct. 326, 28 L. Ed. 372; Tilghman v. Proctor, 125 U. S. 136, 146, 8 S. Ct. 894, 31 L. Ed. 664; Coupe v. Royer, 155 U. S. 565, 583, 15 S. Ct. 199, 39 L. Ed. 263; Knox v. Great Western Mining Co., 6 Sawy. 430, 14 Fed. Cas. 809–811; Locomotive Safety Co. v. Pennsylvania Co. (C. C.) 2 F. 677, 681; Columbia Wire Co. v. Kokomo Co., 194 F. 108, 109, 114 C. C. A. 186; Cambria Iron Co. v. Carnegie Steel Co., 224 F. 949, 140 C. C. A. 437; 20 R. C. L. 1177.

[5] It was competent for the parties to offer proof as to the means available to the defendants for the peeling of peaches at the time when the infringements took place, and it was the duty of the master to determine the profit or advantage to the defendants in the use of the plaintiff's invention as compared with other means available. Plaintiff contends that no machinery was so available to defendants and that the comparison should be made with hand peeling. The evidence of plaintiff has been compiled and presented on this theory.

The defendants, by an overwhelming array of testimony, showed that long prior to plaintiff's invention the lye peeling of peaches was well known to the canners of California. On the 21st of October, 1890, a patent was issued to D. D. Jones for a fruit-dipping apparatus. Jones' invention provided a means for dipping fruit in a solution of lye. It is true, as contended by plaintiff, that the patent did not cover any means for treating the fruit after the application of the lye. It is also true that the process was designed particularly for prunes. But the evidence shows that thousands of these Jones dippers were in use in California at the time when plaintiff's patent was issued, July 21, 1914. A number of peach canners were using the device for removing the skins from peaches. Usually the peaches, after immersion in the lye solution, were doused in clear water and then hosed off by hand. The witness Gardner testified that he had peeled a considerable quantity of peaches by this method as early as 1887. This testimony was not admitted for the purpose of proving anticipation, but only to show the state of the art at the time of the infringement.

Plaintiff contends that the peeling of peaches by this method infringes plaintiff's patent, and that therefore this method is not available to defendants as a standard of comparison. It is contended that a party peeling in this manner might fasten his hose and let it spray the receptacle containing the peaches as it comes out of the lye. The witness Harry C. Pyle testified to spraying in this manner, and it is probable that such a use of the hose would infringe plaintiff's patent. The bulk of the testimony along this line is to the effect that the hose was used by hand, the operator applying the jet or spray with such force and for such a time as the situation required.

[6] We have no hesitation in holding that such a method of peeling does not infringe plaintiff's patent. Plaintiff's is a combination patent; all of its elements are old. In such case the patent is limited to the specific combination. A defendant who omits one of the material elements of the combination does not infringe. The Corn Planter Patent, 23 Wall. 181, 219, 23 L. Ed. 161; Portland Gold Mining Co. v. Hermann, 160 F. 91, 99, 87 C. C. A. 247; Seeger Refrigerator Co. v. American Car Co. (D. C.) 212 F. 742, 749; Wilson & Willard Co. v. Union Tool Co., 249 F. 729, 731, 161 C. C. A. 639. A man holding a hose in his hand is not the mechanical equivalent of the jets of water called for in the Dunkley patent. Carter Machinery Co. v. Hanes, 78 F. 346, 348, 349, 24 C. C. A. 128; In re Smithey, 49 App. D. C. 374, 265 F. 1014. In providing a machine to apply the jets, which prior thereto had been applied by hand, plaintiff's assignor brought about an advance in the art of peeling peaches. It does not necessarily follow that the new process involves a saving in expense over the old. Black v. Thorne, 111 U. S. 122, 124, 4 S. Ct. 326, 28 L. Ed. 372.

[7] Defendants' evidence satisfies us that the peeling of peaches by the use of the Jones dipper and hand hose is efficient and practicable; that the fruit so peeled is equal in quality to that treated by plaintiff's machine. The patent on the Jones dipper expired in 1907, and the device was available for public use when plaintiff's patent was issued. The burden devolved on plaintiff to show that the use of the infringing machines brought the defendants an advantage and profit. It was also incumbent on plaintiff to furnish evidence from which the mas-

ter could determine the value in dollars of the advantage to the defendants of the infringing machines as compared with the Jones dipper. The record is silent on this subject. Plaintiff's evidence is directed to showing the value to the defendants of the infringing machines as compared with hand peeling. Even in this aspect of the case the master found the evidence insufficient to justify a finding for plaintiff. It is unnecessary to review his conclusions on this subject, because we prefer to rest our decision on the other ground. There is no evidence that defendants made any profits by the use of the infringing machines in excess of those which they would have made by using the Jones dipper. The master and the District Court did not err in holding that on this record the defendants using the infringing machines are not chargeable with profits.

The infringement by Anderson-Barngrover Manufacturing Company consisted, not in the use, but in the manufacture, of the infringing machines. The master found its profits to be $220.73. This finding was approved by the District Court, and we see no reason for disturbing it.

The damages awarded plaintiff against the other defendants were based upon the conclusion of the master that 25 cents a ton for all peaches peeled on the infringing machines was a reasonable royalty to be allowed plaintiff. There is no evidence that plaintiff lost the sale of any of its machines because of the infringements, and we find in the record no evidence on which to base a judgment for damages, except on the theory of a reasonable royalty.

[8] Plaintiff's witness Jones testified that $2 a ton would be a reasonable royalty. This testimony was received over the objection of defendants, and we think the objection was well taken. Jones is an accountant in plaintiff's employ. He is not a practical canner, and there is nothing to show that he is familiar with the operations of any business except plaintiff's. It is true, however, that in connection with the trial of this case he had investigated the books and records of the defendants.

[9] Where there is an established regular price for a license to use a patented machine, that price may be taken as a measure of damages against infringers. Rude v. Westcott, 130 U. S. 152, 165, 9 S. Ct. 463, 468 (32 L. Ed. 888); Hunt Bros. v. Cassiday, 64 F. 585, 587, 12 C. C. A. 316. With reference to the sales which suffice to establish such price it is said in the first of the above cases: "Like sales of ordinary goods, they must be common—that is, of frequent occurrence—to establish such a market price for the article that it may be assumed to express, with reference to all similar articles, their salable value at the place designated."

There have been received in evidence seventeen license contracts executed by plaintiff. One of these bears date in 1917, five in 1919, six in 1920, one in 1921, and four in 1922. The interlocutory decree passed on the 8th of December, 1916, enjoined the defendants from infringing plaintiff's patent, and there is no evidence that they have violated the injunction. All of these contracts, therefore, postdate the infringements.

[10] These 17 contracts executed in a period of six years are too few in number and too late in time to establish a market price for the license as of the date of the infringements. It furthermore appears that during these years plaintiff was perfecting its machine. At the date of the infringements the machine was much less efficient than that involved in the later license contracts. The contracts were not mere license agreements. In 15 of the 17 there were involved settlements and releases for prior infringements by the licensees. The royalty of $3 per ton called for by these contracts included supervision and assistance furnished by plaintiff in the use of the machines. The royalty was reduced to $2.40 per ton in case the licensees peeled as many as 1,200 tons of peaches. The machines were furnished by plaintiff and remained its property; in this respect the situation of the licensees differed from that of the defendants, who furnished their own machines. For all of these reasons, and other reasons pointed out by the master in his report, these contracts do not greatly assist us in determining what is a reasonable sum to be allowed plaintiff as a royalty.

[11] The royalty should be fixed in the light of the conditions which obtained when the infringements took place. A. Mecky v. Garton Toy Co. (D. C.) 277 F. 507, 513. It should be fixed at such a sum as the defendants would probably have consented to pay, rather than dispense with the patented machine. Page Machinery Co. v. Dow, Jones & Co. (D. C.) 238 F. 369, 372. The value to the defendants of the present highly developed and useful machine of plaintiff is clearly not determinative of the royalty which should be allowed in the case at bar.

[12] On the other hand, the defendants,

having used machines which embody plaintiff's patent, cannot be heard to dispute the utility of the patent. Lehnbeuter v. Holthaus, 105 U. S. 94, 96, 97, 26 L. Ed. 939; International Tooth Co. v. Hanks Association (C. C.) 111 F. 920, 921; same case affirmed, 122 F. 74, 58 C. C. A. 180; Cummer & Son Co. v. Atlas Co., 193 F. 993, 997, 113 C. C. A. 611; Boyce v. Stewart, 220 F. 118, 126, 136 C. C. A. 72.

[13] The amount reasonable to be allowed as a royalty may be determined on evidence showing the nature of the invention, its utility and advantage. Dowagiac Co. v. Minnesota Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398; Hunt Bros. v. Cassiday, 64 F. 585, 587, 12 C. C. A. 316; Cassidy v. Hunt (C. C.) 75 F. 1012; U. S. Frumentum Co. v. Lauhoff, 216 F. 610, 613, 132 C. C. A. 614; Malleable Iron Range Co. v. Lee (C. C. A.) 263 F. 896. When the court is called upon to fix a royalty, it should be conservative in determining the amount. Consolidated Rubber Tire Co. v. Diamond Rubber Co. (D. C.) 226 F. 455, 459. The amount named should not be so high as to preclude the use of the patented machine. A. Meeky Co. v. Garton Toy Co. (D. C.) 277 F. 507, 511. We have had some doubt of the adequacy of 25 cents a ton, the amount allowed by the master and the District Court, but with hesitation we affirm this finding.

[14] Plaintiff moved before the master to extend the accounting to cover the use by the defendants of the Premier and Anderson-Barngrover machines, and also the Pasadena washer. There is authority for the practice so resorted to for the purpose of raising the question. Wooster v. Thornton (C. C.) 26 F. 274, 275; Hoe v. Scott (C. C.) 87 F. 220; Westinghouse Air Brake Co. v. Christensen Co. (C. C.) 126 F. 764; Chicago Grain Co. v. Chicago, B. & Q. R. Co. (C. C.) 137 F. 101, 105; Walker Patent Bin Co. v. Miller (C. C.) 146 F. 249, 250, 251; Brown Bag Co. v. Drohen (C. C.) 171 F. 438, 439. The master heard argument on this motion, and also saw in practical operation in the peach season all of the above machines, as well as that of plaintiff. He denied the motion, and error is assigned on the action of the District Court in confirming this part of his report. The three machines involved in plaintiff's motion are all patented, and the presumption is that they do not infringe. Ransome v. Hyatt, 69 F. 148, 16 C. C. A. 185; Mastoras v. Hildreth (C. C. A.) 263 F. 571, 575; Western Well Works v. Layne Cor-

poration (C. C. A.) 276 F. 465, 472; Schumacher v. Buttonlath Co. (C. C. A.) 292 F. 522, 531.

[15] Plaintiff contends that its assignor was a pioneer in the art of peach-peeling, and that the claims contained in its patent cover all methods by which peaches can be peeled through a lye bath and the subsequent application of water. Plaintiff relies on the adjudication in the interference proceeding. Dunkley v. Beekhuis, 39 App. D. C. 494, 499. The defendants in this case were not parties to that litigation. An interference proceeding involves no question, except priority of invention as between the parties to the proceeding. U. S. ex rel. Lowry v. Allen, 203 U. S. 476, 482, 27 S. Ct. 141, 51 L. Ed. 281; Westinghouse v. Hien, 159 F. 936, 941, 87 C. C. A. 142, 24 L. R. A. (N. S.) 948; Hillard v. Remington Typewriter Co., 186 F. 334, 108 C. C. A. 534. The opinion passed in that proceeding is therefore ineffectual to establish the construction to be given plaintiff's patent.

It was held by this court in Dunkley Co. v. Pasadena Canning Co., 261 F. 386, 388, that "the Dunkley patents must be limited to the particular means employed, and those means must be limited to directing peeling jets of water upon the fruit." This principle became a part of the law of this case when incorporated in the last opinion handed down. 282 F. 406. This court has expressly held that the Pasadena washer does not infringe plaintiff's patent, and the reasoning on which this conclusion rests is equally applicable to the Premier and Anderson-Barngrover machines. In all of them the peaches, after being dipped in the lye solution, are peeled by rubbing against each other and against the sides of a container while being doused in water.

Plaintiff contends that the intakes in these machines perform the same function as the jets on plaintiff's machine, but it was demonstrated to the satisfaction of the master that in all of them the peeling can be effected with the intake of water shut off. The master compares the difference in the operation of these machines to the difference between washing the hands under a jet of water and dousing them in a washbowl. We have considered all plaintiff's arguments on this branch of the case, and find no error in the denial of plaintiff's motion so to extend the accounting.

Plaintiff filed supplemental bills, alleging the use by the defendants of the Pasadena washer and the Anderson-Barngrover and

Premier machines. Plaintiff prayed in these bills for injunctive relief and an accounting. This practice was resorted to in reliance on the opinion of this court in Riverside v. Stebler, 240 F. 703, 706, 153 C. C. A. 501. The District Court sustained defendants' motions to dismiss these bills and for reasons above stated we find it unnecessary to review this ruling. The use of these machines involving no infringement, plaintiff suffered no injury in the dismissal of these pleadings.

[16] Error is predicated on the allowance of $12,000 as compensation for the master, and also on the division of the costs equally between plaintiff and defendants. We are not disposed to disturb either of these rulings. After preliminary hearings in which questions of law were raised, the taking of testimony began on the 22d of August, 1922. It continued with intermissions until April 11, 1923. Many exhibits were introduced, calling for discriminating analysis on the part of the master. He was called upon to leave San Francisco on several occasions to view the operation of the various machines involved in the controversy. The litigation involved a very large sum of money. In passing on the questions referred to him, the master was required to study a voluminous record and to investigate a number of questions of law. He performed his work with fidelity and care. The compensation awarded was not unreasonable.

The decree is affirmed.